UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JERRY PATCH,

                Plaintiff,

v.

COLCHESTER HOUSING AUTHORITY and
ROBERT GUSTAFSON,

                Defendants.

NOV 9 2023 PM 1:52
FILED-USDC-CT-HARTFORD

## COMPLAINT

Pro se Plaintiff[1] Jerry Patch hereby alleges for his Complaint the following:

1. This is an action to remedy Defendants' violation of Plaintiff's civil rights pursuant to the Fair Housing Act, 42 U.S.C. §§ 3604, 3617; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and pendant state law.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

3. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to this Complaint took place in this district.

## PARTIES

4. Plaintiff Jerry Patch is a physically disabled senior who, during the time period relevant to this Complaint, resided at Dublin Village apartments in Colchester, Connecticut.

---

[1] A draft of this pleading was prepared with the help of an attorney with the Federal Pro Se Legal Assistance Program at New Haven Legal Assistance Association.

1

5. Defendant Colchester Housing Authority is a quasi-public body established pursuant to Connecticut General Statute Sec. 8-40. Colchester Housing Authority receives funding from the U.S. Department of Housing and Urban Development to operate and manage subsidized housing in Colchester, Connecticut, including Dublin Village apartments.

6. Defendant Robert Gustafson, at all times relevant to this Complaint, was the Executive Director of the Colchester Housing Authority.

## FACTS

7. On or about November 1, 2016, Plaintiff moved into a residential unit at Dublin Village apartments ("Dublin Village") designated for disabled seniors.

8. Plaintiff is a physically disabled senior with serious medical conditions.

9. Defendant Colchester Housing Authority exercises control or authority over the terms, conditions, and privileges of rental of residential units at Dublin Village apartments, including Plaintiff's former residence.

10. As executive director, Defendant Gustafson was responsible for repairs and renovations to Dublin Village apartments.

11. In or about 2017, Plaintiff noticed mold growing on clothing hung in a closet inside his Dublin Village apartment.

12. Plaintiff reported the mold to Defendant Gustafson who advised Plaintiff to clean the garment.

13. Plaintiff filed a report with the health inspector who investigated Plaintiff's apartment and instructed Defendants to provide Plaintiff a dehumidifier.

2

14. Defendants did not provide Plaintiff a dehumidifier.

15. Plaintiff began suffering physical ailments and underwent medical testing.

16. On 3/17/21, Plaintiff was tested by Allegy Associates of Hartford, and it was discovered the presence of mold in Plaintiff's body and fungus in Plaintiff's blood. Plaintiff has undergone immunotherapy to present date.

17. Plaintiff continued to suffer physical symptoms and ailments. His immune system became severely compromised, and he twice developed COVID.

18. Plaintiff's mobility became so impaired by mold exposure that around late 2020 or early 2021, Plaintiff was required to use a power wheelchair.

19. Around October 2021, Plaintiff suffered additional physical and mental symptoms including hair loss, fainting, and anxiety. Plaintiff fainted in his shower in 2022, only to find out that his emergency pull cord was not functioning, and only received help when another tenant heard him yelling for assistance. The Defendant was overheard saying that "he didn't care if he died".

20. Plaintiff's dog, a silky Yorkshire Terrier, lost her hair as well.

21. Plaintiff repeatedly asked Defendant Gustafson to test Plaintiff's apartment for mold and to take steps to abate the mold, but Defendant Gustafson refused to do anything.

22. Plaintiff called the health inspector to perform another inspection of his apartment.

23. Defendant Gustafson did not take any steps to investigate the presence of mold in Plaintiff's apartment or to remediate the mold.

24. Defendants failed to remediate the mold in Plaintiff's apartment because they were motivated by animus toward Plaintiff on the basis of his disability.

25. For example, Defendants removed a wheelchair-accessible sidewalk as part of a construction project at Dublin Village.

26. Plaintiff asked Defendant Gustafson to replace the wheelchair-accessible sidewalk ramp, but Defendant refused.

27. Plaintiff complained to Defendants about the removal of the condition of the handicapped sidewalk, which warranted it unsafe.

28. Defendant Gustafson also refused to allow Plaintiff to park in a handicapped parking spot, despite Plaintiff's obtaining a handicapped parking permit and license plates.

29. Instead, Defendant Gustafson allowed his son, assistant executive director Brian Gustafson, to park in the handicapped parking spot, although Brian did not have any handicap.

30. Plaintiff complained to CHRO about Defendants' refusal to provide him with access to a handicapped parking spot, even though he has a handicap placard.

31. Defendant Gustafson also harassed Plaintiff on the basis of Plaintiff's disabilities, making several baseless complaints to the police about Plaintiff's purported behavior.

32. Defendant Gustafson contacted the police about Plaintiff's purported behavior in 2020.

33. Defendant Gustafson further harassed Plaintiff on the basis of Plaintiff's disability by attempting to have Plaintiff, without supportable reason, committed to a mental health institution several times.

apartment buildings. Plaintiffs unit did have the bathroom remodeled, however defendant refused to address the tub shower, where beneath the shower was exposed directly to dirt, which is against town codes. As evidenced in the mold report from RTK Environmental Group, mold was present in this area. Also verified in Health Inspector, Karrenberg's report dated 7/28/20. Unit investigated approximately 5 times by Health Department and asked Defendant to remedy complaints. Defendant Gustafson took no action to remediate mold and also deliberately skipped Plaintiff's apartment and refused to re-side it. Thus being the only unit in the complex not to have siding on it.

35. Plaintiff hired and paid out of his own pocket, a mold specialist company, who took samples for testing on 5/11/21.

37. The mold company, RTK Environmental Group, reported the presence of mold inside Plaintiff's dwelling and concluded that exposure to this mold had caused Plaintiff's physical illness and psychological symptoms.

38. Plaintiff gave a copy of the mold company's report to Defendant Gustafson and again asked Defendants to remediate the mold in Plaintiff's dwelling, but Defendants refused to do anything.

39. Plaintiff vacated his unit by February 1, 2023. Plaintiff cannot afford a market-rate rental and is now homeless.

40. Plaintiff continues to suffer severe physical and mental health effects from exposure to mold in his dwelling at Dublin Village apartments.

41. Plaintiff also continues to suffer psychological and economic harm from Defendants' discrimination and retaliatory adverse actions against him.

## CAUSE OF ACTION: HOUSING DISCRIMINATION
### Fair Housing Act, 42 U.S.C. §§ 3604(f)(2)(A) (against both Defendants); Americans with Disabilities Act, 42 U.S.C. § 12132 (against Defendant Colchester Housing Authority); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (against Defendant Colchester Housing Authority)

42. Plaintiff repeats and realleges the foregoing paragraphs as if fully contained herein.

43. Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, and a qualified individual with a handicap under the Fair Housing Act.

44. Defendants discriminated against Plaintiff in the terms, conditions, and privileges of services in connection with rental of a dwelling by refusing to remediate the mold in Plaintiff's dwelling, refusing to repair a handicapped sidewalk, and refusing to designate a handicapped parking spot for Plaintiff.

45. Defendants discriminated against Plaintiff because of Plaintiff's disability/handicap.

46. Defendants' actions caused Plaintiff economic, physical, and psychological harm.

## CAUSE OF ACTION: RETALIATION
### Fair Housing Act, 42 U.S.C. § 3617 (against both Defendants); Americans with Disabilities Act, 42 U.S.C. § 12203(a) (against Defendant Colchester Housing Authority); Section 504 of the Rehabilitation Act (against Defendant Colchester Housing Authority)

47. Plaintiff repeats and realleges the foregoing paragraphs as if fully contained herein.

48. Plaintiff engaged in a protected activities under 42 U.S.C. § 3617 when he complained about Defendants' elimination of a handicapped sidewalk and when he complained about Defendants' refusal to provide him a handicapped parking spot.

49. Defendants were aware of Plaintiff's protected activity.

6

50. Defendants took adverse action against Plaintiff by lodging false complaints with the police about Plaintiff, by attempting to have Plaintiff committed to a mental health institution without basis, and by refusing to renovate Plaintiff's dwelling during a construction project in which Defendants renovated all Dublin Village apartment dwellings of similar age as Plaintiff's.

51. Defendants' adverse actions were taken close in time to Plaintiff's protected activity.

52. Defendants' actions caused Plaintiff economic, physical, and psychological harm.

## CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF HABITABILITY
### Breach of Implied Warranty of Habitability (against Defendant Colchester Housing Authority)

1. Plaintiff repeats and realleges the foregoing paragraphs as if fully contained herein.

2. Defendant Colchester Housing Authority, as landlord for Dublin Village apartments, failed to provide premises that were reasonably fit to be used as a dwelling place by Plaintiff.

3. Plaintiff's Dublin Village apartment was, during the time period relevant to this Complaint, infected with a toxic level of mold rendering it dangerous and unsuitable for habitation.

4. Exposure to the mold caused Plaintiff severe physical and psychological health consequences and suffering including breathing problems, loss of mobility, hair loss, compromised immune system, and psychological and memory problems.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to enter a judgment against the Defendants:

a) Granting a permanent injunction prohibiting Defendants from violating Plaintiff's statutory rights under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act;

b) Declaratory relief;

c) Compensatory damages;

d) An award of Plaintiff's reasonable costs;

e) Punitive damages; and

f) Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Date: 11/6/23

Jerry Patch

**Pro Se Plaintiff**
215 Clubhouse Rd., Lebanon, CT 06249
Phone: (860) 608-0490